# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Lamont Donegan (R-60191), ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 16 C 10728 |
| v. ) | |
| ) | Judge John Robert Blakey |
| Stephanie Dorethy, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM OPINION AND ORDER**

Petitioner Lamont Donegan, a prisoner at Centralia Correctional Center, filed this *pro se* 28 U.S.C. § 2254 petition for a writ of habeas corpus challenging his 2009 Cook County conviction for murder. He asserts several grounds of ineffective assistance of counsel. Respondent has answered. Petitioner, though given the opportunity, did not reply. For the reasons stated herein, the Court denies the § 2254 petition and declines to issue a certificate of appealability.

## **BACKGROUND**[1]

In 2006, Petitioner and Keith Pikes were members of a Chicago southside gang known as the Four Corner Hustlers ("Hustlers"), which was at war with another Chicago gang, the Gangster Disciples ("Disciples"). [11-12] at 2. On August 18 or 19,

---

[1] The background facts are taken from the state appellate court decisions addressing Petitioner's direct appeal and state post-conviction appeal. [11-4] (*People v. Donegan*, 2012 IL App (1st) 102325, 974 N.E.2d 352 (Ill. App. Ct. 2012); [11-12] (*People v. Donegan*, 2015 IL App (1st) 133394-U (Ill. App. Ct. 2015). A state court's factual findings, even an appellate court's discussion of background facts, are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007); *Barkes v. Kennedy*, No. 16-CV-4643, 2019 WL 2297316, at *1 (N.D. Ill. May 30, 2019) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)). Petitioner makes no showing to rebut the presumption of correctness.

2006, Disciples member Quentez Robinson rode a scooter into Hustlers' territory. *Id.* A car with other Disciples members followed him. *Id.* Petitioner came from an alley and shot at, but missed, Robinson. *Id.* Petitioner was then struck by the car following Robinson, which carried the other Disciples members. *Id.* Another Hustlers member, DeAngelo Coleman, found Petitioner lying on the street. *Id.* Petitioner told Coleman that he wanted to retaliate. *Id.*

On August 20, 2006, Petitioner and two other Hustlers gang members, Keith Pikes and Golden Richardson, drove into the Gangster Disciples' neighborhood and shot at a group of Disciples, killing Lorne Moseley. [11-4] at 2. In June of 2008, police arrested both Pikes and Petitioner for the murder of Moseley, and they were prosecuted in separate simultaneous trials. *Id.*

Robinson testified at Petitioner's trial and told the jury about the shooting incident that occurred one or two days before Moseley's murder. [11-4] at 2. Robinson testified that he was a Gangster Disciple, that Petitioner was a member of the Hustlers, that Robinson rode into Hustlers' territory, and that Petitioner came out of an alley shooting at Robinson. *Id.* at 3. Robinson testified that a day or two later, he and other Disciples were standing in front of a friend's house when a boxy car drove by with its windows down. *Id.* Robinson saw a hand come from the rear window and begin firing. *Id.* Robinson testified that he heard 12 to 15 shots from two different guns, but he could not identify the shooter. *Id.*

Herbert Lemon testified that he was a Disciples member and was in the car following Robinson when Robinson rode into Hustlers' territory. [11-4] at 3. Lemon

2

testified that he saw Petitioner shoot at Robinson and that the car then hit Petitioner. *Id.* Lemon testified that, several days later, he stood in front of a friend's house on 104th Street and Corliss Avenue with Mosely and other Disciples, when a gray, boxy car drove by with Petitioner in the passenger seat and Pikes in the driver seat. *Id.* Lemon testified he saw both men shooting. *Id.*

DeAngelo Coleman and Vernon Crowder, both members of the Hustlers, also testified at Petitioner's trial. [11-4] at 3. Both stated that they knew Petitioner and Pikes and that neither was a member of the Hustlers. *Id.* at 3–4, 7. Both also testified that they did not remember seeing Petitioner or Pikes on the day of Moseley's murder. *Id.* at 4. Both Coleman and Crowder, however, previously testified differently before a grand jury and the prosecution introduced at trial both their prior inconsistent testimony, as well as their prior written statements. *Id.* at 3–5, 7–9.

Before the grand jury, Crowder testified that Petitioner was a member of the Hustlers and that, in August of 2006, the Hustlers and Disciples were at war. [11-4] at 4. Crowder further swore before the grand jury that, while walking home on August 20, 2006, he saw Petitioner and Pikes cleaning out an older, gray Toyota Camry. *Id.* Pikes asked Crowder if he wanted to join Petitioner and Pikes to "handle some business" on Corliss Avenue, which Crowder understood to mean that they were intending to harm some Disciples. *Id.* at 4–5. Crowder declined because he was on probation. *Id.* at 5. Later, Crowder heard gunshots. *Id.* Several days later, according to Crowder's grand jury testimony, he saw Petitioner with a .45-caliber gun and heard Petitioner say he "can't get caught with a gun because it had a body on Corliss," which

3

Crowder understood to mean that the gun was used to murder Moseley. *Id.* In addition to Crowder's grand jury testimony, the prosecution introduced the nearly identical written statement Crowder made to assistant state's attorneys. *Id.*

The prosecution also introduced DeAngelo Coleman's grand jury testimony and written statement. [11-4] at 7. Before the grand jury, Coleman stated that, on August 19, 2006, he was on 107th Street when he heard gunshots; he followed the sound and saw Petitioner lying on the ground. *Id.* at 8. Petitioner said that a car with Disciples members hit him because he was shooting at Disciples member Quentez Robinson. *Id.* Petitioner told Coleman that he wanted to retaliate, which Coleman understood to mean that Petitioner wanted to kill a Disciple, but not necessarily Robinson. *Id.* Coleman testified before the grand jury that, the next day, he heard Petitioner and Pikes discuss stealing a car to do a mission. [11-4] at 8. Petitioner allegedly had a "jiggler" key that would fit any older Toyota model. *Id.* Coleman told the grand jury that, later that same day, he saw Pikes drive up in an older, gray Toyota Camry, which Pikes and Petitioner cleaned out. *Id.* According to Coleman, Pikes and Petitioner went through a gangway to a house where the Hustlers kept guns, and Petitioner returned with his own .45 caliber gun and a .40 caliber gun, which was available for gang members to use. *Id.* Coleman testified that Golden Richardson, another Hustlers member, arrived at that time, and Petitioner, Pikes, and Richardson drove away in the Camry (with Pikes in the driver's seat, Petitioner in the front passenger seat, and Richardson in the back). *Id.* at 8–9. Coleman testified he heard Petitioner say, "It's time" and that, several days later, he heard Petitioner

4

say, "it was about time we got one," and heard him describe how he, Pikes, and Richardson drove to 105th and Corliss, and shot at a group of Disciples. [11-4] at 9. Sometime later, Coleman was with Petitioner and other Hustlers when the police officers approached; the Hustlers scattered, and Coleman saw Petitioner fall, his gun falling out of his pocket. *Id.* Petitioner later told Coleman that the police officers found the gun. *Id.* Coleman gave an identical written statement, and the prosecution introduced the written statement along with the sworn grand jury testimony at Petitioner's trial. *Id.*

At trial, Brandon Merkson testified that he was one of the Gangster Disciples in the car following Robinson when he rode into Hustlers' territory, and that he saw a man come from an alley shooting at Robinson but could not recognize the shooter. [11-4] at 5–6. The prosecutor then introduced Merkson's prior grand jury testimony and written statement; in both, he identified Petitioner as the person who shot at Robinson. *Id.* at 6. Merkson testified at trial that he told the state's attorney who took his statement that he was not sure who shot at Robinson, but the state's attorney wrote into the statement that Merkson identified Petitioner as the shooter. *Id.*

Merkson also testified at trial that, on August 20, 2006, he was standing on the street with several other Disciples when a gray, box-like car drove up and started shooting. [11-4] at 6. Merkson testified that he saw Petitioner shooting from the back seat but that he could not identify the driver. *Id.* On cross-examination, Merkson acknowledged that, in his prior written statement, he said that he could not

5

recognize the shooters inside the car and only knew that two guns were being fired. *Id.* at 6–7.

At trial, Chicago Police Officer Reno testified that he recovered a .45 caliber gun when chasing a group of men in an alley two days after Moseley's murder. [11-4] at 9. Forensic Scientist William Demuth testified that .45 caliber bullet fragments recovered from Moseley's head and bullets found at the scene of the shooting positively matched a test bullet fired from the gun Reno found. *Id.* at 10.

Petitioner did not testify at trial or call any witnesses in his defense. [11-4] at 11. A jury convicted him on the first-degree murder charge, but acquitted him on another count charging him with personal discharge of the firearm during the crime. *Id.* The trial judge sentenced Petitioner to 27 years in prison. *Id.*

**State Court Direct Appeal**

Petitioner filed a direct appeal, raising the following claims:

(1) trial counsel was ineffective for failing to object to:

    (a) the introduction of Coleman's and Crowder's written statements because neither personally witnessed Petitioner shoot Moseley;

    (b) lay opinion testimony about what witnesses understood to be the meaning of several phrases Petitioner used like "do some business" and "retaliate";

    (c) the introduction of Merkson's prior consistent statements, which prejudiced Petitioner by having incriminating testimony presented three times to the jury;

    (d) the introduction of Coleman's and Crowder's prior inconsistent statements because their trial testimony did not damage the State's case and thus impeaching their testimony was unwarranted under Illinois law;

6

(e) the introduction of written statements from Coleman, Crowder, and Merkson as impermissibly bolstering their grand jury testimony which provided the same evidence;

(f) introduction of Pikes' incriminating statement made to Coleman after the murder—that Pikes drove while Petitioner fired at Gangster Disciples—when Pikes did not testify at trial and the statement furthered no conspiracy theory;

(2) the trial court erred in allowing evidence that Petitioner shot at Robinson, for which Petitioner was not charged and which Petitioner contends did not establish a motive for shooting Moseley; and

(3) the trial court failed, pursuant to Ill. Supreme Court Rule 431(b), to inform jurors that Petitioner must be presumed innocent until proven guilty and that he need not present evidence or testify.

[11-1]. The state appellate court rejected all these grounds and affirmed. [11-4].

Petitioner filed a petition for leave to appeal (PLA) in the Illinois Supreme Court asserting the three ineffective assistance of counsel grounds described in 1(c), (d), and (e) above. [11-7]. The Illinois Supreme Court denied the PLA. [11-8].

**Post-Conviction Proceedings**

Petitioner filed a state petition for post-conviction relief pursuant to 725 ILCS 5/122-1, [11-29] at 64–71, raising the following claims:

(1) his conviction was based on insufficient evidence;

(2) his trial attorney was ineffective for:

(a) not impeaching testimony from Lemon, Robinson, and Merkson based on their alcohol and drug use on the night of the murder;

(b) not challenging Petitioner's fitness for trial;

(c) failing to inform prosecutors of Petitioner's willingness to plead guilty in exchange for a five-year sentence;

7

>    (d) failing to call Petitioner's family members as alibi witnesses at trial; and
>
> (3) appellate counsel was ineffective for failing to raise Issues 1 and 2 stated above.

*Id.* The state trial court denied the petition. [11-30].

On appeal, Petitioner argued only that trial counsel was ineffective for not calling Petitioner's relatives as witnesses at trial and the state post-conviction trial court should have allowed Petitioner more time to gather affidavits to support his petition. [11-9]. The state appellate court, upon finding that Petitioner had not attached affidavits from alibi witnesses with his post-conviction (as Illinois law requires), affirmed the dismissal of Petitioner's state post-conviction petition. [11-12]. Petitioner filed a PLA, again asserting that his attorney should have called alibi witnesses, and the Illinois Supreme Court again denied the PLA. [11-13], [11-14].

**Petitioner's 28 U.S.C. § 2254 Petition**

Petitioner then filed his 28 U.S.C. § 2254 petition for federal habeas relief in this Court. His petition [1] asserts the following claims:

> (1) trial counsel was ineffective for not objecting to the introduction of prior inconsistent statements from Coleman and Crowder about codefendant Pikes' admission since neither witness had personal knowledge about Moseley's murder;
>
> (2) trial counsel was ineffective for not objecting to lay opinion testimony from witnesses about the meaning of phrases Petitioner used ("retaliate," "do business," etc.);
>
> (3) trial counsel was ineffective for not objecting to Merkson's prior consistent statements;
>
> (4) trial counsel was ineffective for not objecting to Coleman's and Crowder's grand jury testimony and written statements as prior

8

inconsistent statements because their trial testimony did not damage the State's case;

(5) trial counsel was ineffective for not objecting to the introduction of both grand jury testimony and written statements from Coleman, Crowder, and Merkson since their prior testimony and statement were essentially identical and thus repetitive;

(6) trial counsel was ineffective for not objecting to Crowder's written statement, which contained hearsay evidence from Petitioner's codefendant;

(7) the cumulative effect of trial counsel's failure to object to the introduction of evidence violated Petitioner's Sixth Amendment right to effective representation;

(8) the trial court erred in admitting evidence that Petitioner shot at Robinson because it did not establish motive for shooting Moseley and was highly prejudicial;

(9) the trial court failed to admonish potential jurors about Petitioner not having to introduce any evidence or testify;

(10) the evidence was insufficient to support a verdict of murder because Herb Lemon's and Brandon Merkson's accounts of the murder were inconsistent and vague;

(11) trial counsel was ineffective for not questioning Herbert Lemon and Brandon Merkson about their alcohol and drug use on the night of the murder; and

(12) trial counsel was ineffective for not challenging Petitioner's fitness for trial.

## DISCUSSION

### A. Procedurally Defaulted Claims

The majority of Petitioner's § 2254 claims—claims 1, 2, and 6 through 12—are procedurally defaulted, and this Court may not reach their merits. State prisoners seeking habeas relief in federal court must exhaust the remedies "available in the

courts of the State." 28 U.S.C. § 2254(b)(1)(A). To exhaust state court remedies, state prisoners must give the state courts "'one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.'" *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Therefore, a claim is unexhausted if it is not fairly presented to both an Illinois appellate court and the Illinois Supreme Court. *Boerckel*, 526 U.S. at 848; *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007).

Although Petitioner argued claims 1 through 9 on direct appeal, his PLA to the Illinois Supreme Court raised only three claims: (1) trial counsel's ineffectiveness for not objecting to the introduction of all of Merkson's grand jury testimony and written statement because much of that evidence was consistent with his trial testimony; (2) trial counsel's ineffectiveness for not objecting to the introduction of Coleman's and Crowder's grand jury testimony and written statements because their trial testimony, though inconsistent to their prior statements, did not damage the State's case and impeaching them was unnecessary; and (3) trial counsel's ineffectiveness for not objecting to the introduction of Coleman's, Crowder's, and Merkson's written statements because those statements were identical to their grand jury testimony, which had already been admitted. [11-7]. Thus, through the PLA, Petitioner preserved only claims 3, 4, and 5.

As to his post-conviction proceedings, Petitioner raised a number of issues in the state trial and appellate courts but presented only one claim in his post-conviction

10

PLA—trial counsel's ineffectiveness for not calling Petitioner's family members as alibi witnesses at trial, a claim he failed to assert in his § 2254 petition. [11-13], [1].

A petitioner's failure to fairly present a habeas claim to the state's appellate and supreme court "leads to a default of the claim, thus barring the federal court from reviewing the claim's merits." *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) (citing *Boerckel*, 526 U.S. at 848). Based upon the record, claims 1, 2, and 6 through 12 are procedurally defaulted.

Procedural default, however, may be excused, provided the petitioner demonstrates either: (1) "'cause for the default and actual prejudice'"; or (2) that failure to consider the claims "'will result in a fundamental miscarriage of justice.'" *Snow*, 880 F.3d at 864 (quoting *Thomas v. Williams*, 822 F.3d 378, 386 (7th Cir. 2016) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Petitioner, though given the opportunity (Dkt. 12), never replied to Respondent's contention that almost all his § 2254 claims remain procedurally defaulted. Thus, Respondent's procedural default arguments prevail. *United States ex rel. Bell v. Pierson*, 267 F.3d 544, 555 n.6 (7th Cir. 2001). Moreover, nothing in the record suggests cause and prejudice, or a fundamental miscarriage of justice such that this Court should proceed to review the merits of the defaulted claims.[2] This Court, therefore, denies claims 1, 2, 6, 7, 8, 9, 10, 11, and 12.

---

[2] Although Petitioner raised several claims of ineffective assistance of counsel, he does not argue counsel ineffectiveness as cause for why he failed to raise the claims in his PLAs. *See* [1]. Furthermore, "the claim of ineffective assistance must be raised in state court before it can suffice on federal habeas relief as 'cause' to excuse the default of another claim (even if that other claim is also ineffective assistance of counsel)." *Dellinger v. Bowen*, 301 F.3d 758, 766 (7th Cir. 2002) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000)). Petitioner, who was represented by counsel only on direct appeal, never asserted ineffective assistance as cause to the state courts. Nor does Petitioner cite to

**B.     Claim 3: Ineffective Assistance of Trial Counsel – Failure to Object to the Introduction of Merkson's Prior Consistent Statements**

In claim 3, Petitioner argues ineffective assistance of his trial attorney for failing "to object to prior consistent statements of a key witness." [1] at 6. According to Petitioner, "bolstering the credibility of a witness with a prior consistent statement is improper," and "but for trial counsel's error, there is a reasonable probability that the outcome would have been different." *Id.*

Petitioner's § 2254 petition does not identify the key witness. But it is clear he is repeating his ineffective assistance argument on direct appeal for trial counsel allowing all of Merkson's grand jury testimony and written statement into evidence. [11-1] at 28) (on direct appeal, Petitioner argued that, even though Merkson's trial testimony remained inconsistent with *some* of his prior statements, "the State improperly bolstered the credibility of a key witness with prior consistent statements" when *all* of Merkson's prior statements were introduced into evidence). According to Petitioner, "the trial court neglected its duty to 'admit only those portions which were actually inconsistent.'" *Id.* at 29 (quoting *People v. Lawrence*, 644 N.E.2d 19, 22 (Ill. App. 1st Dist.1994)).

The state appellate court, after stating the constitutional standard for addressing an ineffective assistance of counsel claim, determined that both Merkson's

---

new evidence to demonstrate that a miscarriage of justice would result if his § 2254 claims were not reviewed. *Thomas v. Williams*, 822 F.3d 378, 387 (7th Cir. 2016) (a fundamental miscarriage of justice exception to procedural default requires "'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial'" demonstrating that the petitioner is "actually innocent") (quoting *House v. Bell*, 547 U.S. 518, 537 (2006)).

grand jury testimony and written statement were admissible under state law and that Petitioner's trial attorney was thus not ineffective. [11-4] at 11–13, 21–24. This Court cannot grant habeas corpus relief for a constitutional claim adjudicated on the merits by a state court, unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state-court decision is contrary to Supreme Court precedent "if the state court arrives at a conclusion opposite" to that reached by the Supreme Court "on a question of law" or "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a result opposite to it. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). For a state court's application of federal law to be unreasonable, it must be "more than incorrect; it must have been objectively unreasonable." *Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019) (citing *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)). Unreasonable means something "lying well outside the boundaries of permissible differences of opinion." *McGhee v. Dittmann*, 794 F.3d 761, 769 (7th Cir. 2015)). As long as a federal court remains satisfied that the state appellate court "took the constitutional standard seriously" and produced an "answer within the range of defensible positions," the

federal court should deny the § 2254 claim. *Felton*, 926 F.3d at 464 (quoting *Taylor v. Bradley*, 448 F.3d 942, 948 (7th Cir. 2006)).

Here, the state appellate court correctly noted "the familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)," when addressing Petitioner's ineffective assistance of counsel claims. [11-4] at 12. Under *Strickland*, a defendant must demonstrate that "counsel's performance was deficient and that such deficient performance substantially prejudiced him." *Id.*; *see also Strickland*, 466 U.S. at 688, 694. Additionally, the state appellate court reasonably applied *Strickland*. The state court determined that, under state law, both Merkson's grand jury testimony and written statement were admissible given his trial testimony. [11-4] at 24. The state court noted that, in Illinois, the "general rule is that prior consistent statements of a witness are inadmissible for the purpose of corroborating the witness' trial testimony, because they serve to unfairly enhance the credibility of the witness." *Id.* at 23) (citing *People v. Terry*, 728 N.E.2d 669, 678 (Ill. App. Ct. 2000)). However, there are two "distinct exceptions to this rule: (1) where the prior consistent statement rebuts a charge that a witness is motivated to testify falsely, and (2) where the prior consistent statement rebuts an allegation of recent fabrication." *Id.* (citing *People v. Richardson*, 809 N.E.2d 141, 146 (Ill. App. Ct. 2004)).

At trial, Merkson told the jury that he did not see Petitioner shoot at Robinson and that his grand jury testimony was coerced, [11-4] at 23–24; this testimony justified the introduction of both his grand jury testimony and his written statement. Petitioner claims that Merkson's prior testimony and written statement were

14

inadmissible and that his trial attorney should have done a better job of challenging their introduction. He, in effect, asks this Court to "overturn the Illinois Appellate Court's determination that the statements were admissible" under Illinois law, but this is something a federal habeas court cannot do. *Ruhl v. Hardy*, 743 F.3d 1083, 1098 (7th Cir. 2014). A federal court "cannot disagree with a state court's resolution of an issue of state law." *Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016). Rather, the Supreme Court has "repeatedly held" that a state court's interpretation of state law "binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").[3]

Given the admissibility of Merkson's grand jury testimony and written statement, Petitioner's attorney was not ineffective for not "better challenging" their introduction at trial. *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013) ("Counsel is not ineffective for failing to raise meritless claims."). Claim 3 is denied.

---

[3] To the extent this Court can review the state appellate court's determination of the background facts about the admissibility of Merkson's prior statements, the state appellate court's factual findings were well supported by the record. At trial, Merkson testified that he could not identify the person who shot at Robinson. [11-22] at 15–17. He was then presented with his signed statement. *Id.* at 18–21. Although the statement said that Petitioner shot at Robinson, Merkson testified at trial that he never said this and that the state's attorney improperly put that information into the statement. *Id.* at 25–27. The prosecutor then showed Merkson his grand jury testimony, wherein he stated that he saw Petitioner shoot at Robinson. *Id.* at 35–36. Merkson stated at trial that he was given his written statement prior to testifying before the grand jury, that he provided answers he thought the state's attorney wanted, and that detectives had threatened him that he would receive more jail time for his unrelated robbery offense if he did not cooperate. *Id.* at 79–92, 119–24. At trial, Merkson acknowledged that he answered "no" under oath when asked several times before the grand jury if he had been threatened or coerced to testify. *Id.* at 86–88. The state appellate court's findings as to Petitioner's ineffective-assistance claim were not "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2).

## C. Claim 4: Ineffective Assistance of Trial Counsel - Failure to Object to the Introduction of Coleman's and Crowder's Grand Jury Testimony

In claim 4, Petitioner argues that his trial attorney failed to object to the introduction of prior grand jury testimony by Coleman and Crowder. He argues that the introduction of this evidence was improper because neither witness's trial testimony "damaged the state's case," and therefore, his defense counsel should have objected. [1] at 6.

In Illinois, a witness's credibility may be attacked by impeaching the witness's testimony with prior inconsistent statements where the trial testimony "has damaged, rather than failed to support the position of the impeaching party." *People v. Cruz*, 643 N.E.2d 636, 658 (Ill. 1994) (emphasis in original) (internal quotes and citations omitted); *People v. Martinez*, 810 N.E.2d 199, 209 (Ill. App. Ct. 2004); 725 ILCS 5/115-10.1; *see also* Illinois Supreme Court Rule 238.

Here, the state appellate court determined that testimony from Coleman and Crowder that Petitioner was not a gang member and that they did not talk to Petitioner or Pikes around the time of the murder "were changes in position that caused affirmative harm to the prosecution's case." [11-4] at 25.[4] The state appellate court concluded that, under Illinois law, "the State had a legitimate need to impeach the witnesses' credibility, and their prior inconsistent statements were admissible for

---

[4] The state appellate court's determination—that Crowder and Coleman harmed the People's case when they testified at trial contrary to their prior statements—was reasonable in light of the record. [11-4] at 25; [11-21] at 22–99; [11-23] at 15–126. Both witnesses testified they knew little to nothing about Petitioner's involvement with Moseley's shooting, *id.*, and the prosecutor, after Crowder repeatedly stated he remembered nothing from the day Moseley was shot, asked to treat Crowder as a hostile witness. [11-21] at 30.

16

that purpose." *Id.* As a result, Petitioner's claim that "trial counsel's failure to properly object constituted ineffective assistance of counsel has no merit." *Id.*

The state appellate court's denial of this ineffective assistance of counsel claim rests upon its determination that prior statements from Crowder and Coleman were admissible under state law. As discussed above, a federal habeas court "cannot disagree with a state court's resolution of an issue of state law," *Miller*, 820 F.3d at 277, and a state court's interpretation of state law "binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76; *see also Estelle*, 502 U.S. at 67–68. This Court sees no viable error in the state proceedings and thus Petitioner cannot establish any ineffectiveness of his attorney for failing to object on this ground. *Warren*, 712 F.3d at 1104 ("Counsel is not ineffective for failing to raise meritless claims."). Claim 4 is denied.

**D.     Claim 5: Ineffective Assistance of Trial Counsel - Failure to Object to the Introduction of Merkson's, Crowder's, and Coleman's Written Statements**

In claim 5, Petitioner argues ineffective assistance of his trial attorney for counsel's failure to object to the introduction of both the grand jury testimony and written statements from Coleman, Crowder, and Merkson. [1] at 8. According to Petitioner, the prior testimony and the prior statements were "so similar" that introducing both types of evidence at trial allowed the State to "improperly bolster" its case. *Id.*

Petitioner raised this argument on direct appeal, and the state appellate court determined that Illinois law undermined Plaintiff's argument. [11-4] at 26–27 (citing

*People v. Maldonado*, 922 N.E.2d 1211, 1229 (Ill. App. Ct. 2010) ("We . . . hold that the introduction of more than one statement that is inconsistent with a witness's trial testimony, whether or not such statements are consistent with each other, is proper."), and *People v. White*, 2011 IL App (1st) 092852, ¶ 52, 963 N.E.2d 994, 1004–06 (Ill. App. Ct. 2011)). Because an objection about the admission of two similar prior inconsistent statements would have been meritless, the state appellate court denied Petitioner's claim. [11-4] at 28–29.

Claim 5, like claims 3 and 4, asks this Court to review the correctness of the state appellate court's interpretation of Illinois' rules of evidence. Once again, this Court cannot (and does not) disagree "with a state court's resolution of an issue of state law," *Miller*, 820 F.3d at 277, and a state court's interpretation of state law "binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76; *see also Estelle*, 502 U.S. at 67–68. Given the admissibility of both the grand jury testimony and prior written statements from Coleman, Crowder, and Merkson under state law, Petitioner's trial attorney was not ineffective for failing to object to the admission of this evidence. Claim 5, like claims 3 and 4, is denied.

E.     **Certificate of Appealability and Notice of Appeal Rights**

The denial of Petitioner's petition is a final decision ending this case. If he seeks to appeal, he must file a notice of appeal in this Court within 30 days judgment is entered. Fed. R. App. P. 4(a)(1). He need not bring a motion to reconsider this decision to preserve his appellate right, but if he wishes the Court to reconsider its judgment, he may file a motion under Fed. R. Civ. P. 59(e) or 60(b). A Rule 59(e)

motion must be filed within 28 days of entry of judgment and suspends the deadline for filing an appeal until the motion is ruled on. *See* Fed. R. Civ. P. 59(e) and Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the motion is ruled on only if the motion is filed within 28 days of the judgment. Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

The Court declines to issue a certificate of appealability. Petitioner cannot make a substantial showing of the denial of a constitutional right, and cannot show that reasonable jurists would debate, much less disagree, with this Court's resolution of Petitioner's claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

## CONCLUSION

For the reasons explained above, this Court denies Petitioner's habeas corpus petition [1]. All pending motions are denied as moot. The Court declines to issue a certificate of appealability. The Clerk is directed to: (1) update the docket to show that Petitioner is now at Centralia Correctional Center; (2) terminate Respondent Stephanie Dorethy as Respondent; (3) add Jon Fatheree, Acting Warden of Centralia Correctional Center, and Petitioner's current custodian, as Respondent; (4) alter the

case caption to *Donegan v. Fatheree*; and (5) enter judgment in favor of Respondent and against Petitioner. Civil Case Terminated.

Dated: March 27, 2020

Entered:

_____
John Robert Blakey
United States District Judge